We're going to switch gears here in a minute. We have a third case this morning. It's number 17-1072 CF CRESPE LLC v. Silicon Laboratories Inc. Again, Mr. Smith. Thank you, Your Honor. May it please the Court, my name is Craig Smith. I represent the appellant CF CRESPE. In this case, the Court should reverse the Board's finding of obviousness because it's not supported by substantial evidence. The Board was supposed to look at what the petitioner set forth in the petition and decide whether or not those arguments could be met based on the burden of proof set forth. But the Board didn't address some of the dispositive issues that both of the parties considered to be relevant and instead made determinations that were separate and apart from what the arguments were made in the petition. As a result, you had the Board making determinations that neither party seemed to have been pushing for or arguing over. And even on this appeal, we still have this strange dichotomy where, in response to our appeal, Silicon Laboratories is arguing for its original position that was set forth in its petition as opposed to the argument that the Board set forth in its final written decision. We believe as a result the Board's decision should be reversed because it's not supported by substantial evidence. We think this case might be similar in kind to this Court's decision in In Re Magnum Tools where the Court cautioned the Board not to be coming up with new decisions or new theories and arguments on its own that were not set forth in the petition. Claims 11 and 12 of the 585 patent are not obvious. The Board's findings with regard to claims 11 and 12 are not supported by substantial evidence. Here, none of the references that were set forth disclose storing a plurality of FER filters in memory. Silicon Labs tried to fill this gap by using a reference called Grumman to show that this element existed. But what the parties were arguing over is whether Grumman actually discloses one FER filter. And that was a key issue that was going back and forth. We submitted that Grumman doesn't disclose more than one FER filter and it's just a single filter, not multiple FER filters. Grumman has a single FER filter having real and imaginary components and those coefficients are part of just one filter, not multiple filters. But doesn't the Grumman filter, it adapts, it can switch rapidly between the two different filter functions? It is adaptive. I mean, it can switch, but it is a single filter and Grumman describes itself as a filter, not as multiple filters. But in terms of functionality, it's got multiple functions. It has multiple functions and many filters do have that ability where it can have multiple things that the filter performs. And Silicon Lab has argued that we shouldn't look at what Grumman actually says it is, which it describes itself as a single filter and not as multiple filters. But I think a person of ordinary skill in the art looking at what Grumman actually disclosed would want to know that Grumman is describing itself as a single FER filter, not as multiple FER filters. But it performs the functions of multiple filters, right? No, Your Honor. It performs a function of a single filter where it allows it to adapt and switch, but it does not perform multiple filters. Didn't the board find that having a set of filter coefficients in Grumman was the equivalent of having multiple filters? No, Your Honor. The board sort of sidestepped this whole issue, even though the parties felt like it was a dispositive issue with regard to these claims. The board looked at our argument where we had presented that the evidence of Grumman and exactly what Grumman discloses is a single filter and said, well, that's not really the point here. The point is that there are other references that disclose filters. And so the board actually picked up on another reference that the petitioner hadn't argued was the multiple filters in this case. So for example, the petitioner argued, and this is at Appendix 103 through 105, that Grumman disclosed the multiple FER filters and explicitly states, it says, because Grumman discloses storing coefficients for two FER filters in memory, this limitation is met by Grumman. So he specifically said that we're relying on Grumman for this. But the board didn't rely on Grumman and sort of pushed that away and said, no, we're going to rely on Harris for the filters, but that's not the argument that was set forth in the petition, even though the board later seemingly inconsistently admits that Grumman is relied on for the FER filters as if that is also a argument that had been made. And so we have a situation where the board seems to be taking a position that the petitioner hasn't set forth. And even on appeal, we're hearing that the arguments that are made in support of the board's decision are arguments that go back to the petition, where they're arguing about whether Grumman discloses a single or multiple FER filters, as opposed to what the board actually did. In our view, the board shouldn't have created new grounds for purposes of finding the claims unpatentable. It should have looked at what was actually set forth in the petition and what was argued by the petitioner, and under that analysis should have found that these claims were unpatentable. In light of this court's prior holdings, we think the board improperly took its own theories based on the prior art and substituted them for the arguments that the petitioner was actually making. This also appears in a second place in the board's decision, and this relates to the same claim, but a slightly different part of the limitation. Grumman is also used by the petitioner to show this element that says that the signal processor is going to index memory to retrieve one of a plurality of FER filters. And Grumman doesn't disclose retrieving a plurality of FER filters, and Grumman doesn't disclose a single processor for doing this. It discloses a multiple set of processors for processing the information. Our expert explained that this parallel processing concept is not a single processor, but multiple processors. But the board didn't rely on what was set forth in the petition. It relied on a different argument. So the petitioner relied on Grumman for the processor, not for these other references that are referred to as Thompson and Harris. But the board then looked and said, well, we're going to find that Thompson combined with Harris has this particular processor. But again, similar to the argument I've just mentioned, the board is now pulling in its own theories and not using the theories that were set forth in the petition. We think this is inappropriate because the theories that the board is supposed to be analyzing to see whether or not the petitioner has met its burden of proof is not the arguments that the board is deciding. The board is deciding on new theories that it is coming up with independent of what the parties have set forth. As a result, we think that the board's findings with regard to claims 11 and 12 should be reversed because the board was relying on evidence and arguments that the board was coming up with as opposed to what was set forth in the petition. If the board had looked at the petition and the arguments there, it clearly would have found that there was no support for the arguments that were being made. Similarly, claims 13 and 14 of the 585 patent are not obvious. Claim 13 requires a standard selection circuit, and this generates a select signal indicative of a format of said input RF signal, and then the signal processor is going to select a FER filter in response to the select signal. Now, neither Thompson nor Harris disclose a standard selection circuit. The board previously made that determination in a separate petition that was filed in these series of actions, and our expert explained to the board that there's no need for a standard selection circuit in Thompson or Harris because their format, they're processing this information in parallel. So in this instance, what Silicon Labs did is it tried to bring in Zenith, which is another prior art reference, and Zenith doesn't cure the problem for them because Zenith does not teach the selection of a FER filter in response to a select signal. It teaches between selecting between two demodulators based on the presence or absence of a sync signal. The claim requires more than this, and it requires not just determining the format of a TV signal as they suggest, but it requires that it must select a FER filter in response to the select signal, and this is something Zenith simply does not do. As a result, I believe the board erred in coming to its determination here by looking at the references and filling in a gap that Zenith does not fill for the petitioner in this case. Finally, claims 15 and 20 are not obvious. The board's decision is also based on its interpretation of the Zenith reference, but Zenith fails to disclose detecting a carrier signal as required by the claims. Zenith discloses a sync signal that merely detects the presence or absence of an analog signal. It doesn't disclose the detection of carrier signals such as described in the 585 patent. The 585 patent focuses on the idea that you have to be able to detect, are you detecting an analog signal or a digital signal? Zenith talks about you just can detect whether it's an analog signal. Well, if it's not analog, it has to be something else, right? Correct, Your Honor. It could be something else, but it doesn't have to be just one other thing. Zenith says, well, if it's not analog, it's digital, and says, well, you know that there's, it's digital because of the absence. The 585 patent talks about the idea that the reason we're talking about a plurality of potential carrier signals is because it talks about not just analog and digital, but there may be other signals that it would need to detect, and you need those carrier signals in order to be able to know what it is. And so the mere absence of a signal isn't a signal. And as a result, Zenith doesn't disclose the idea that it is detecting signals that are specific to analog, to digital, or to any other type of signal that could be in the stream. As a result, we believe the board's decision is not supported by substantial evidence. Thank you. Let me sit down. I'm looking at page 28 of the board's decision, and the paragraph at the top of the page where the petitioner's argument was well known to implement FIR filters by storing sets of FIR filter coefficients in memory, et cetera, et cetera. And then they say, we agree with petitioner. Isn't that adopting the petitioner's argument? I don't think it's adopting all of the petitioner's argument in whole because the board later goes on in the next page and says, we disagree with the patent owner's framing of the dispositive issue as whether Grumman discloses a single two-part FIR filter or two FIR filters. So it basically says, we don't really think that's the issue here. We think we're going to look at the issue from the context of another reference. And so it brought in another reference and said, we think Harris is what discloses the FIR filters. But if you go to the petition, the petition never says that Harris is the one that's bringing in the filters. It explicitly relies on Grumman for the filters. Thank you, Your Honor. Thank you. Mr. Ayers. Yes, Your Honor. Peter Ayers on behalf of the Eppley Silicon Labs and may it please the court. On this decision was amply supported by substantial evidence. The board did not come up with a new theory on its own. It, as Judge Dyke pointed out, accepted the petitioner's theory that the combination of Thompson, Harris, and Grumman renders claim 11 and 12 obvious. Moreover, this distinction of one filter versus two is really semantic and doesn't really join the issues and that's what the board found because it essentially ignores the claim language. If I could turn to the claim language because I think it's really dispositive in this case of this single versus multiple filters. Counsel, let me ask you a question on something that's been baffling me. Aren't you barred from your arguments with respect to claims 13 and 14 because these were denied already? Institution was denied by the board? No, Your Honor. The board did not make any kind of finding with respect to whether or not the selection circuit was obvious in light of Zenith. All it did was say that the combination of Thompson and Harris didn't inherently disclose claim 13. In that case, the theory that we put forward to the board was that Thompson, as you may know, there's an adaptive filter in there and it has an input that says TV standard. The Thompson receiver is capable of processing both analog and digital formats. Our theory was, well, it has an input there that the filter is responsive to and so a person of ordinary skill in the art would know that there's a circuit that would have to generate that. The board didn't accept that, and so it exercised its discretion in the second IPR and took up our theory that Thompson and Harris in combination with Zenith found that combination obvious. There was no finding of fact. We were never given the opportunity to appeal that institution decision and so there's no collateral estoppel. Could you reasonably raise the Zenith reference in the prior IPR? That is potentially true, Your Honor. However, the issue is whether or not the board could exercise its discretion under 325, and it said, yes, we can and we will. While the board may have been permitted to decline to entertain our theory, now that it has, it's properly before this court and we're not barred from raising it here. Does that answer your question? Let me just get back to the claims because I think this really drives home the point about this filter and why the board didn't really accept or really engage in the discussion about one filter versus two. If we look at claim one itself, it says a channel filter. That's one of the main elements. What does that filter have? It has another filter in it, an anti-aliasing filter and then a signal processor that itself performs multiple filter functions. The fact that something is referred to as a filter is not dispositive of whether or not that filter can perform multiple filter functions. That's what we have with Grumman. We have an adaptive filter and a filter that can perform multiple FIR filter functions. That's what the board found. That's really the dispositive issue, not whether or not Grumman describes itself as an adaptive filter or refers to the filter. We're not saying that the teaching of Grumman is irrelevant, but you have to ground yourself in the claim language. In this case, it's clear that the filter is a functional limitation. You start with claim 10, for example. It says wherein said signal processor applies one of a plurality of finite impulse response filters. It's performing a filtering function. The patent owner itself concedes that a filter is a functional limitation in this case if you look at their reply brief. What does claim 11 require? All it requires is that these filters be stored in a memory. We know from the specification that the only thing that is stored in a memory are the coefficients. We said Grumman describes an adaptive filter that has two memory banks. We refer the court to our expert's block diagram where he lays this out very clearly, as we've shown in our brief, that there are two independent sets of filter functions that each perform a separate FIR filter. That satisfies the limitation of claim 11. With respect to this question about a single processor in Grumman, I think it's telling that they're not challenging, in this case, claim 12. That was also invalidated by the board because that would expose the inconsistencies in their theory. Claim 12 itself says that a signal processor comprises a first computing unit and a second computing unit, showing that a signal processor doesn't have to be a single component. That's clear from the specification. With respect to claims 13 and 14, the question about the standard... Let me turn to claim 15, which depends on claim 13, the notion of detecting carrier signals. Again, this argument about the standard selection circuit has to detect two different types of sync signals is not only inconsistent with the claim language, but also with their own specification. The claim language, if you look at claim 15, it says that the standard selection circuit generates said select signal by detecting carrier signals, identifying one of said formats of said input RF signal. The reason why it says that is because the specification makes clear that it can detect carrier signals in one case and it can infer the absence of carrier signals in another. That's the so-called auto-detection embodiment that they have. The fact that Zenith admittedly doesn't detect two different types of carrier signals, again, does not distinguish Zenith from claims 15 and claim 20. It's entirely consistent with the specifications teaching that this standard selection circuit can either detect the presence of a carrier signal or infer the format from the absence of a carrier signal. I believe I've addressed all of the arguments here today, but I'm happy to answer any further questions the panel has. Okay, thank you. Thank you, Your Honor. Thank you, Mr. Harris. I'd just like to make two quick points on rebuttal. The first is it's a little surprising to hear that the issue of the one versus multiple filters wasn't an issue, since if you look through all the briefing, both below and even on appeal, that seems to be the dispositive issue that the parties were arguing as to whether or not it's accurate to be multiple filters. Now, the board sort of sidestepped that issue in our view, but that was really the crux of the issue. And the claims that we're looking at refer to a plurality of filters. I'm not asking the court or the board to suggest that there's something to be added to this. No, the claims specifically require a plurality of filters. And Grumman is explicit. It says it is disclosing a complex weight for filter. This is at 235. And then at 236, it goes on and says, we're talking about the two halves of the filter. So when it talks about the real and imaginary components that we were talking about earlier, it says those are two halves of one filter. And this specifically says that that's what it's discussing when it talks about the separation between the real and imaginary portions of it. Finally, on the signal processing issue, the 585 patent actually describes different ways of doing the processing. It can do it with one unit or it can do it with multiple units. The fact that the claims are written so that they can capture either doing it with one signal processor or multiple signal processors is not surprising since the specification specifically contemplates that difference. Thank you, Your Honors. Okay. Thank you, Mr. Smith. I thank both counsel. Case is submitted.